No. 23-3694

IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

———————————

CITY OF HUNTINGTON BEACH, et al.,
*Plaintiffs and Appellants,*

v.

GAVIN NEWSOM, et al.,
*Defendants and Appellees,*

———————————

On Appeal from the District Court for the
Central District of California
No. 8:23-cv-00421
Hon. Fred W. Slaughter

———————————

**PETITION FOR REHEARING EN BANC**

———————————

Michael E. Gates, No. 258446
City of Huntington Beach - City Attorney's Office
2000 Main Street, P.O. Box 190
Huntington Beach, CA 92648
T: (714) 536-5555 – Fax: (714) 374-1590
Email: Michael.Gates@surfcity-hb.org

James Phillips - Gene Schaerr
SCHAERR | JAFFE LLP
1717 K Street NW, Suite 900
Washington, DC 20006
(202) 787-1060
gschaerr@schaerr-jaffe.com
jphillips@schaerr-jaffe.com

*Attorneys for Plaintiffs and Appellants City of Huntington
Beach, Huntington Beach City Council, Mayor of Huntington
Beach, Tony Strickland, and Mayor Pro Tem of Huntington
Beach, Gracey Van Der Mark*

1

# TABLE OF CONTENTS

Page

Table of Contents ....................................................2

Table of Authorities................................................4

Rule 35 Statement..................................................8

Introduction........................................................10

Summary of the Case...........................................15

Reasons *South Lake Tahoe* Should Be Reviewed................16

I.     Supreme Court precedent is at least in tension with, if not outright in conflict with, *South Lake Tahoe.* ........16

   A.   *South Lake Tahoe* is inconsistent with Supreme Court standing doctrine. .............................................16

   B.   *South Lake Tahoe* is supported only, if at all, by cases involving state-granted privileges, not substantive Constitutional rights.............................17

   C.   The cases relying on the broad formulation of the 1907 case *Hunter v. Pittsburgh*—such as *Williams v. Baltimore* and *Ysursa v. Pocatello Educ. Ass'n*— are inconsistent with subsequent decisions in *Washington v. Seattle Sch. Dist.* and *Gomillion v. Lightfoot*, calling *Hunter*'s broad statement "unconfined dicta." .....................................................19

II.    Supreme Court precedent instructs courts to consider the "agency's character" before concluding it is a subdivision, an instruction that the panel, bound by *South Lake Tahoe*'s per se rule, could not follow. .......23

III.   The panel disregarded the state constitution's division of municipal powers among the legislature and charter cities, disregarding U.S. Supreme Court direction not to interfere in states' internal political organization. .24

IV.    At least five sister circuits, and cases in this Circuit, are in direct conflict with *South Lake Tahoe*. .............26

V.    The panel held, unsupported by any authority, that state-compelled speech is nonjusticiable if the aggrieved plaintiff is a city councilmember.................27

VI.   Conclusion ....................................................................28

Certificate of Compliance....................................................29

Certificate of Service ..........................................................30

Memorandum of Ninth Circuit Affirming Lower Court's Ruling..................................................................................31

TABLE OF AUTHORITIES

Page

**CASES**

*Aguayo v. Richardson,*
    473 F.2d 1090 (2d Cir. 1973)................................................18

*Birkenfeld v. City of Berkeley,*
    49 Cal. App. 3d 464 (1975)..................................................25

*Board of Education v. Allen,*
    392 U.S. 236 (1968) ...........................................................13

*Burbank-Glendale-Pasadena Airport v. Burbank,*
    136 F.3d 1360 (9th Cir. 1998) .............................................11

*Carlsbad Union Sch. Dist. v. Rafferty,*
    429 F.2d 337 (9th Cir. 1970) ..............................................26

*City of Charleston v. Public Serv. Comm.,*
    57 F.3d 385 (4th Cir. 1995) .................................................14

*City of New York v. Richardson,*
    473 F.2d 923 (2d Cir. 1973)................................................18

*City of San Juan Capistrano v. Cal. Pub. Utils. Comm'n, (Ex),*
    2017 WL 6820027 (C.D. Cal. Oct. 16, 2017) .....................16

*City of San Juan Capistrano v. Cal. Pub. Utils. Comm'n,*
    937 F.3d 1278 (9th Cir. 2019) ................................11, 12, 14

*City of South Lake Tahoe v. California Tahoe Reg'l Plan. Agency,*
    449 U.S. 1039 (1980) ....................8-14, 16-18, 20-22, 24-27

*City of South Lake Tahoe v. California Tahoe,*
    625 F.2d 231 (9th Cir. 1980) ..........................................8, 11

*Exeter-West Greenwich Reg'l Sch. Dist. v. Pontarelli,*
    788 F.2d 47 (1st Cir. 1986)............................................14, 26

*Gomillion v. Lightfoot,*
    364 U.S. 339 (1960) .........................................19, 20, 21, 26

*Haytasingh v. City of San Diego,*
    66 Cal.App.5th 429 (2021) .................................................24

*Hunter v. City of Pittsburgh,*
    207 U.S. 161 (1907) ....................................... 8, 13, 19-21, 25

*Indian Oasis—Baboquivari Unified Sch. Dist. v. Kirk (Indian Oasis I),*
    91 F.3d 1240 (9th Cir. 1996) ...................................11-12, 22

*Johnson v. Bradley,*
    4 Cal.4th 389 (1992) ..................................................9, 24-25

*Lujan v. Defenders of Wildlife,*
    504 U.S. 555 (1992) .............................................8, 12, 15, 17

*Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle,*
    429 U.S. 274 (1977) .......................................................23-24

*Nevada Comm'n on Ethics v. Carrigan,*
    564 U.S. 117 (2011) ...........................................................27

*Newark v. New Jersey,*
    262 U.S. 192 (1923) ...........................................................18

*Okanogan Sch. Dist. #105 v. Superintendent of Public Instruction for Washington,*
    291 F.3d 1161 (9th Cir. 2002) ...........................................16

*Palomar Pomerado Health System v. Belshe,*
    180 F.3d 1104 (9th Cir. 1999) ................................11, 14, 17

*People v. Hoge,*
    55 Cal. 612 (1880).................................................................9

*R.R. Comm'n v. Los Angeles R. Co.*,
    280 U.S. 145 (1929) ............................................................25

*Regents of the Univ. of Cal. v. Doe*,
    519 U.S. 425 (1997) ...................................... 8, 12, 15, 23-24

*Rogers v. Brockette*,
    588 F.2d 1057 (5th Cir. 1979) ...........................................26

*Sato v. Orange Cnty. Dep't of Educ.*,
    861 F.3d 923 (9th Cir. 2017) ..............................................23

*South Macomb Disposal Authority v. Township of Washington*,
    790 F.2d 500 (6th Cir.1986) .........................................14, 26

*Star-Kist Foods, Inc. v. County of Los Angeles*,
    42 Cal. 3d 1 (1986) ............................................................25

*SurvJustice Inc. v. DeVos*,
    2019 WL 1434141 (N.D. Cal. Mar. 29, 2019) ....................16

*SurvJustice Inc. v. DeVos*,
    No. 18-CV-00535.................................................................16

*Trenton v. New Jersey*,
    262 U.S. 182 (1923) ....................................................18, 22

*Tweed-New Haven Airport Authority v. Tong*,
    930 F.3d 65 (2d Cir. 2019)...........................................14, 26

*United States v. State of Alabama*,
    791 F.2d 1450 (11th Cir.1986) ..........................................26

*Valley Forge College v. Americans United*,
    454 U.S. 464 (1982) ...........................................................17

*Washington v. Seattle Sch. Dist. No. 1*,
    458 U.S. 457 (1982) ....................................................19, 22

*Williams v. Mayor of Baltimore*,
    289 U.S. 36 (1933) ...................................................18-19, 22

*Ysursa v. Pocatello Educ. Ass'n,*
  555 U.S. 353 (2009) ....................................................19, 22

**STATE CONSTITUTIONAL PROVISIONS**

California Article XI § 3.............................................................10

California Article XI § 5.............................................................10

**FEDERAL RULES**

Federal Rules of Appellate Procedure Rule 35 ...........................8

Federal Rules of Civil Procedure rule 12(b)(1)........................16

Federal Rules of Civil Procedure rule 12(b)(6).........................16

### RULE 35 STATEMENT

The Panel's decision—applying the per se rule of *City of South Lake Tahoe v. California Tahoe*, 625 F.2d 231 (9th Cir. 1980) prohibiting "political subdivisions" from bringing any claims against their states—conflicts with the following decisions of the United States Supreme Court:

1.      *Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992), holding that standing requires examination of injury-in-fact, causation, and redressability. The holding of *South Lake Tahoe*, determining standing by a categorical per se rule that considers none of these elements, cannot be squared with *Lujan*.

2.      *Regents of Univ. of Cal. v. Doe*, 519 U.S. 425 (1997), holding that whether an entity is an "arm of the state" entitled to Eleventh Amendment protection, or instead is a mere "political subdivision," requires consideration of the nature and character of the entity's relationship with the state, which involves analyzing state law. This is inconsistent with *South Lake Tahoe* and its progeny, which apply a per se rule and refuse to consider state law, leading to inconsistent federal and state court outcomes on important constitutional questions.

3.      *Hunter v. City of Pittsburgh*, 207 U.S. 161, 176 (1907), holding that federal courts will "have nothing to do with the interpretation of the Constitution of the state." And

8

the Supreme Court of California has stated that it was "manifestly the intent" of the drafters of the state constitution "to emancipate municipal governments from the authority and control formerly exercised over them by the Legislature." *Johnson v. Bradley*, 4 Cal.4th 389, 395 (1992), quoting *People v. Hoge*, 55 Cal. 612, 618 (1880). By rejecting state's careful assignment of certain constitutional powers to Charter Cities and concluding that they all consist in the State, *South Lake Tahoe*'s per se rule ignores the principle of non-interference.

Consideration by the full Court is necessary to secure and maintain uniformity of its decisions consistent with the Supreme Court's decisions.

## INTRODUCTION

The Governor of the State of California seeks to compel the City of Huntington Beach—a charter city created under article XI, § 3 of the California Constitution and exercising the powers under article XI, § 5—to issue a false, state-mandated statement of policy priorities expressing support for the Governor's high-density housing objectives. While the Governor does not deny that increasing the City's housing supply by approximately 50% will negatively impact its "Ground Water Supply," "Air Quality," "Greenhouse Gas Emissions," "Hydrology and Water Quality," "Noise," and "Utilities and Service Systems," the Governor insists that the City and its Councilmembers simply accept these negative impacts by making a public declaration that they are outweighed by the virtues of his high-density housing scheme.[1]  This is the State's wanton disregard for the duty of Councilmembers to carefully balance development with environmental protections, a wanton disregard for the duty placed on Councilmembers by voters to exercise their local authority, and it is a wanton disregard for the Councilmembers' right to not make false statements.

The City sought First Amendment protection in the district court. But the panel, affirming the district court's

---

[1] City must satisfy the requirement of California Environmental Quality Act, Cal. Code Regs., tit. 14, § 15093, in concert with the RHNA Laws for the implementation of the zoning change.

order dismissing the case, concluded that the City may not raise *any* federal constitutional challenges against the State—including the Commerce Clause, Due Process, and most importantly, the First Amendment. In reaching this conclusion, the panel followed this Court's per se bar in *City of South Lake Tahoe v. California Tahoe*, 625 F.2d 231 (9th Cir. 1980) ("It is well established that '[p]olitical subdivisions of a state may not challenge the validity of a state statute under the Fourteenth Amendment.'") and *Burbank-Glendale-Pasadena Airport v. Burbank*, 136 F.3d 1360 (9th Cir. 1998) (applying *South Lake Tahoe* to suit brought by a joint-powers authority created by charter city).

*South Lake Tahoe* should be reconsidered. Four members of this Court have called to reconsider *South Lake Tahoe. See City of San Juan Capistrano v. Cal. Pub. Utils. Comm'n*, 937 F.3d 1278, 1282 (9th Cir. 2019) (Nelson, J., concurring); *Burbank*, 136 F.3d at 1365 (Kozinksi, J., concurring); *Palomar Pomerado Health System v. Belshe*, 180 F.3d 1104, 1111 (9th Cir. 1999) (Hawkins, J., concurring); *Indian Oasis—Baboquivari Unified Sch. Dist. v. Kirk (Indian Oasis I)*, 91 F.3d 1240, 1250 (9th Cir. 1996) (Reinhardt, J., dissenting). And for good reason: while *South Lake Tahoe*'s bright-line rule is easy to follow, it is inconsistent with Supreme Court doctrines of standing, sovereignty, and non-interference with state constitutions.

11

1. As a rule defining cities' standing, *South Lake Tahoe* and its progeny are inconsistent with the standing doctrine articulated by the Supreme Court, requiring that courts consider the elements of injury-in-fact, causation, and redressability. *Lujan*, 504 U.S. at 560. *See also Indian Oasis I*, 91 F.3d at 1246, 1250 (Reinhardt, J., dissenting) ("[A] per se bar on standing can[not] be reconciled with *Lujan* or literally dozens of other modern standing cases."), vacated for reh'g en banc and dismissed on other grounds, 109 F.3d 634 (9th Cir. 1997) (en banc).

2. As a categorical rule defining the relationship of every power within a state as a "political subdivision," *South Lake Tahoe* and its progeny are inconsistent with the "arm of the state" doctrine articulated by the Supreme Court, requiring that courts consider a government entity's nature and the character of its relationship with the state before deeming it part of the state's sovereignty. *Regents of Univ. of Cal. v. Doe*, 519 U.S. 425 (1997).

3. *South Lake Tahoe* has always been inconsistent with Supreme Court precedent. This perhaps owes to the fact that "*South Lake Tahoe* offered no independent reasoning for its per se standing rule." *City of San Juan Capistrano v. Cal. Pub. Utils. Comm'n*, 937 F.3d 1278, 1280 (9th Cir. 2019). Instead, the very Supreme Court authorities on which *South Lake Tahoe* relies require courts to examine the relationship between the state and the municipality to

12

determine whether it is a mere "political subdivision." Where, as here, the provisions of the state constitution confirm that the municipality is not acting as a mere "political subdivision," a per se rule offends the limitations the Supreme Court has commanded this Court to respect.

4.    As a categorical rule that defines all cities and counties as "political subdivisions" subservient to the Legislature and the Governor—contrary to the California Constitution as interpreted by the Supreme Court of California—*South Lake Tahoe* and its progeny are inconsistent with the rule articulated by the Supreme Court that the Constitution does not interfere with a state's internal political organization. *Hunter v. City of Pittsburgh*, 207 U.S. 161, 176 (1907) (a federal court will "have nothing to do with the interpretation of the Constitution of the state and the conformity of the enactment of the assembly to that Constitution.").

5.    As a categorical rule that bars "political subdivisions" from bringing any claims whatsoever against their states, *South Lake Tahoe* and its progeny are inconsistent with Supreme Court precedent allowing a municipality to bring a First Amendment challenge against the state. *Board of Education v. Allen*, 392 U.S. 236 (1968); *see City of South Lake Tahoe v. California Tahoe Reg'l Plan. Agency*, 449 U.S. 1039, 1042 (1980) (White, J., dissenting from denial of certiorari).

13

6.   As a per se standing bar, *South Lake Tahoe* is inconsistent with at least five other circuits. As Judge Hawkins noted in this concurring opinion in *Palomar*, the Fifth, Tenth, and Eleventh Circuits have expressly rejected a per se rule. *Palomar*, 180 F.3d at 1110 (Hawkins, J., concurring). As has the Second Circuit. *See Tweed-New Haven Airport Authority v. Tong*, 930 F.3d 65, 72 (2d Cir. 2019). *See also Exeter-West Greenwich Reg'l Sch. Dist. v. Pontarelli*, 788 F.2d 47 (1st Cir. 1986) (school district may bring First Amendment claims against state).  And other circuits have suggested, without holding, that they do not favor such a rule. *See City of Charleston v. Public Serv. Comm.*, 57 F.3d 385, 389-90 (4th Cir. 1995); *South Macomb Disposal Auth. v. Township of Washington*, 790 F.2d 500, 504 (6th Cir. 1986).

*South Lake Tahoe* is an outlier. This Court, observed Judge Hawkins, has "never satisfactorily stated our rationale" for the categorial rule. *Palomar*, 180 F.3d at 1109 (Hawkins, J., concurring). And as Judge Nelson observed, even if *South Lake Tahoe* is correct, "the underlying rationale still matters." *San Juan Capistrano*, 937 F.3d at 1284 (Nelson, J., concurring). *South Lake Tahoe* should be reconsidered to "permit full consideration of important constitutional questions in future cases," *id.*, and to bring this Court's precedent in line with the Supreme Court's doctrines concerning the scope of state sovereignty in

*Regents*, 519 U.S. 425, and concerning standing *Lujan*, 504 U.S. 555.

## SUMMARY OF THE CASE

In their lawsuit, Plaintiffs challenge a novel State-compelled speech regime that is part of the State's high-density housing statutory scheme in its Regional Housing Needs Allocation laws. The RHNA Laws require the City, with a protected coastline of unique wetlands, to increase its 81,000 units of housing stock by approximately 50%—or 40,000 new units—in just the next few years as a direct result of the State-mandated 13,368 quota of new high-density housing units.

Addressing the environmental impacts of the State's quota, at a Council Meeting in April 2023, Plaintiffs relied on expert advice in an official environmental report (EIR) concerning the "significant and unavoidable impacts" to the City's "Air Quality," "Greenhouse Gas Emissions," "Hydrology and Water Quality," "Noise," and "Utilities and Service Systems." (3-ER-346—49.) After considering these impacts, Plaintiffs concluded they could not agree to the statement in the proposed Statement of Overriding Considerations that the State's high-density housing goal justified these significant environmental harms.

The State's requirement[2] that Plaintiffs make that public Statement is the heart of Plaintiffs' First Amendment claim.

Plaintiffs appealed from the district court's ruling granting Defendants' motions to dismiss. The district court concluded that Plaintiffs' First Amendment and other challenges were categorically barred under *South Lake Tahoe* because the City is a ""political subdivision" of the state," and thus cannot sue the State. (1-ER-11—13.) The panel, following *South Lake Tahoe*, agreed.

### REASONS *SOUTH LAKE TAHOE* SHOULD BE REVIEWED

## I.    Supreme Court precedent is at least in tension with, if not outright in conflict with, *South Lake Tahoe.*

### A.    *South Lake Tahoe* is inconsistent with Supreme Court standing doctrine.

*South Lake Tahoe* has been treated as a rule of Article III standing rather than prudential standing.[3] When

---

[2] Requirement of California Environmental Quality Act, Cal. Code Regs., tit. 14, § 15093, in concert with the RHNA Laws for the implementation of the zoning change.

[3] Though this Court has yet to explicitly label *South Lake Tahoe*'s rule, it has arguably treated it as jurisdictional at least twice. *Okanogan Sch. Dist. #105 v. Superintendent of Public Instruction for Washington*, 291 F.3d 1161 (9th Cir. 2002); *City of San Juan Capistrano v. Cal. Pub. Utils. Comm'n*, No. SACV 17-01096 AG (Ex), 2017 WL 6820027 (C.D. Cal. Oct. 16, 2017) (dismissing under rule 12(b)(1)). *See also SurvJustice Inc. v. DeVos*, No. 18-CV-00535-JSC, 2019

16

ruling on Article III standing, the Supreme Court has held that "the irreducible constitutional minimum of standing contains three elements," namely, causation, injury-in-fact, and redressability. *Lujan*, 504 U.S. at 560. Ensuring these factors are considered "tends to assure that the legal questions presented to the court will be resolved, not in the rarified atmosphere of a debating society, but in a concrete factual context conducive to a realistic appreciation of the consequences of judicial action." *Valley Forge College v. Americans United*, 454 U.S. 464, 472 (1982).

Here, Plaintiffs established injury-in-fact, causality, and redressability. But the district court did not consider any of the *Lujan* elements, instead dismissing under *South Lake Tahoe*'s per se standing bar. That per se bar can be reconciled with *Lujan* or dozens of other modern standing cases.

**B.    *South Lake Tahoe* is supported only, if at all, by cases involving state-granted privileges, not substantive Constitutional rights.**

*South Lake Tahoe* "never satisfactorily stated our rationale for including all constitutional challenges within the ban." *Palomar*, 180 F.3d at 1109 (Hawkins, J., conc.).

---

WL 1434141, at *4 (N.D. Cal. Mar. 29, 2019) ("[D]istrict courts in this circuit consider challenges to prudential standing in the context of motions to dismiss under Rule 12(b)(6), not under Rule 12(b)(1).").

17

Instead, it cited four other cases, which in turn furnish no analysis, citing ultimately to a fifth case, *Trenton v. New Jersey*, 262 U.S. 182, 188 (1923), which stated not a per se rule but a qualified rule. The cited cases, all involving contract and taxing authority and not federal Constitutional rights, have never supported a categorical per se bar on raising substantive Constitutional claims. *City of New York v. Richardson*, 473 F.2d 923, 929 (2d Cir. 1973), cert. denied, 412 U.S. 950 (1973) (no analysis, citing *Williams v. Baltimore*); *Williams v. Mayor of Baltimore*, 289 U.S. 36, 40 (1933) (no analysis, citing *Trenton v. New Jersey*); *Newark v. New Jersey*, 262 U.S. 192, 196 (1923) (issued the same day as *Trenton*, citing it without analysis); *Aguayo v. Richardson*, 473 F.2d 1090, 1100-01 (2d Cir. 1973), cert. denied, 414 U.S. 1146 (1974) (no analysis, citing *Williams*).

While *Trenton* did state that municipalities have no inherent right to self-govern, the Supreme Court qualified that statement as applying only "[i]n the absence of state constitutional provisions safeguarding it to them." *Id.* at 187. So *Trenton* does not support a categorical rule either.

18

C.    **The cases relying on the broad formulation of the 1907 case *Hunter v. Pittsburgh*—such as *Williams v. Baltimore* and *Ysursa v. Pocatello Educ. Ass'n*—are inconsistent with subsequent decisions in *Washington v. Seattle Sch. Dist.* and *Gomillion v. Lightfoot*, calling *Hunter*'s broad statement "unconfined dicta."**

The case best supporting *South Lake Tahoe*—though not cited in its opinion—is *Hunter v. Pittsburgh*, 207 U.S. 161 (1907), a case which rejected a city's challenge to annexation conducted pursuant to state law. But despite *Hunter*'s statement that "[m]unicipal corporations are political subdivisions of the State," *id.* at 178, *Hunter* did not make such a holding categorically.

- First, *Hunter* did not dismiss plaintiff's claims on standing grounds. *Id.* at 176 ("[W]e are [not] warranted in dismissing the case without consideration of their merits.").

- Second, when the Court stated that "[m]unicipal corporations are political subdivisions of the State," the Court explained that it was discussing municipalities that were "created"—that is, created *by the legislature*—to exercise such powers "entrusted to them"—that is, entrusted *by the legislature. Id.* at 178. So the discussion of *Hunter* does not reach a case where, as here, a municipality

19

is created, not by the legislature but under *the state constitution*, and exercises powers entrusted, not by the legislature but by *the state constitution*.

- Third, ensuring no violence to states' internal constitutional organization, the *Hunter* Court explained that "[w]e have nothing to do with the interpretation of the constitution of the State . . . ." *Id.* at 176.

- Fourth and finally, the *Hunter* opinion nowhere suggests that the city alleged its powers originated elsewhere than in legislative enactment—such as from the state constitution itself.

The Supreme Court confirmed these limitations in *Gomillion v. Lightfoot*, 364 U.S. 339 (1960), a case involving Fourteenth Amendment claims to equal protection.[4] As the Court observed, *Hunter* did not stand for a categorical rule of state power over municipalities, but a confirmation that the federal Constitution is silent on such matters: "the Court has

_____

[4] It might be pointed out that, while *South Lake Tahoe*'s per se bar applies only against municipalities, while the plaintiffs in *Gomillion* were individual residents of Tuskegee challenging the state law modifying the city's shape from a square to a 28-sided figure, with the effect of excluding nearly all the city's black voters from its boundaries. But the *Hunter* problem is the same as to either plaintiff, namely, whether the state's powers over municipalities are limited by the substantive rights afforded by the federal Constitution. *Gomillion* confirmed that they are.

never acknowledged that the States have power to do as they will with municipal corporations." *Id.* at 344.

Responding to the state, who "invoke[d] generalities expressing the State's unrestricted power" over cities and other municipalities, the Court cautioned that "[t]o exalt this power into an absolute is to misconceive the reach and rule of this Court's decisions in the leading case of *Hunter*" and related cases. *Id.* at 342. In light of the Constitutional rights at stake, the Court emphatically refused to endorse a per se rule: "it is imperative that generalizations, based on and qualified by the concrete situations that gave rise to them, must not be applied out of context in disregard of variant controlling facts." *Id.* at 344. The Court narrowed the broad language of *Hunter* and related cases, calling it "unconfined dicta," and clarified the rule this way: "it is not that the State has plenary power to manipulate in every conceivable way, for every conceivable purpose, the affairs of its municipal corporations, but rather that the State's authority is unrestrained by the particular prohibitions of the Constitution considered in those cases." *Id.*

Summing up, the *Gomillion* Court observed that state action "is not immune to attack simply because the mechanism employed by the legislature is a redefinition of municipal boundaries." *Id.* at 347.

The Supreme Court specifically allowed municipalities to bring Fourteenth Amendment challenges against the state in *Washington v. Seattle Sch. Dist. No. 1*, 458 U.S. 457 (1982) ("political subdivision" question irrelevant where state exercises its power inconsistent with the Constitution). *See also Indian Oasis—Baboquivari Unified Sch. Dist. v. Kirk (Indian Oasis I)*, 91 F.3d 1240, 1250 (9th Cir. 1996) (Reinhardt, J., dissenting) (*Seattle School Dist. No. 1* tacitly overturned *South Lake Tahoe*); *School Bd. Of the City of Richmond, VA v. Baliles*, 829 F.2d 1308 (4th Cir. 1987) (recognizing school district's standing to sue the state).

More recently in *Ysursa v. Pocatello Educ. Ass'n*, 555 U.S. 353 (2009), the Court again recited the statement from *Williams*—shorn of the context discussed above—that a political subdivision "has no privileges or immunities under the federal constitution which it may invoke in opposition to the will of its creator." *Id.* at 363. But *Trenton*, 262 U.S. at 182, qualifies the proposition by explaining that it applies only "[i]n the absence of state constitutional provisions safeguarding it to them"—such as the provisions of the California Constitution. As a per se rule by its nature excludes this qualification, it is inconsistent with Supreme Court precedent.

In short, both *South Lake Tahoe* and *Ysursa* have their origins in *Trenton*, 262 U.S. at 187, which expressly qualifies the statement as not applicable where "state constitutional

provisions safeguard[ such rights] to them." *South Lake Tahoe* turns the Supreme Court's conditional rule into an unconditional rule.

## II.  Supreme Court precedent instructs courts to consider the "agency's character" before concluding it is a subdivision, an instruction that the panel, bound by *South Lake Tahoe*'s per se rule, could not follow.

The panel concluded that whether a charter city is a "political subdivision" is decided by looking solely to federal law. But that misapplies both circuit precedent in *Burbank*, and Supreme Court precedent in *Regents of the Univ. of Cal. v. Doe*, 519 U.S. 425, 429-430 (1997) ("that federal question can be answered only after considering the provisions of state law that define the agency's character."). Deciding an "agency's character" by resort to a legal term of art—like "political subdivision," which has never been defined— violates the Supreme Court's mandate to "consider[] the provisions of state law" bearing on that character. *Id*. at 429, n. 5.

The concepts "arm of the state" and "political subdivision" are two sides of the same coin. The cases hold that state sovereign immunity applies to "arms of the state," but not to its "political subdivisions." *Sato v. Orange Cnty. Dep't of Educ.*, 861 F.3d 923, 928 (9th Cir. 2017) (citing *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 280 (1977)). To determine whether an entity is an arm of the

state or a political subdivision, the Supreme Court has directed the courts to look to state law. *Regents*, 519 U.S. at 429, n. 5.

And under California state law, Charter Cities are *not* political subdivisions. *Haytasingh v. City of San Diego*, 66 Cal.App.5th 429, 461 (2021) (distinguishing municipalities created by the state who "at its pleasure, may modify or withdraw all such powers," from counties and charter cities, whose powers derive from the state constitution). As the Supreme Court of California has explained, it was "manifestly the intent" of the drafters of the state constitution "to emancipate municipal governments from the authority and control formerly exercised over them by the Legislature." *Johnson*, 4 Cal.4th at 395.

Contrary to the Supreme Court holdings in *Regents* and *Mt. Healthy City Sch. Dist.* directing the courts to examine whether an entity is a "political subdivision" by looking to state law, *South Lake Tahoe*'s per se rule answer the question in a vacuum.

## III. The panel disregarded the state constitution's division of municipal powers among the legislature and charter cities, disregarding U.S. Supreme Court direction not to interfere in states' internal political organization.

In concluding that federal courts must stay out of internal state disputes, the panel assumed, ironically, an

24

interpretation of the California Constitution contrary to that decided by the California Supreme Court. The California Constitution deliberately withheld from the legislative branch a plenary police power "to prevent existing provisions of charters from being frittered away by general laws." *Johnson*, 4 Cal.4th at 395; *Birkenfeld v. City of Berkeley*, 49 Cal. App. 3d 464, 464 (1975) ("[a]s to municipal affairs, a charter city has the power . . . to govern without interference from the state."). In other words, the California Constitution vests the police power in not one body but two: certain local authorities to be exercised by charter cities, and the remaining police powers exercised by the legislature.

Yet under *South Lake Tahoe*'s per se rule suggests that a state may not structure its constitution in this way. This violates the very principle underlying the no-standing rule that "the Constitution does not interfere with a state's internal political organization." *Star-Kist Foods, Inc. v. County of Los Angeles*, 42 Cal. 3d 1, 8 (1986) (discussing federal authorities); *Hunter v. City of Pittsburgh*, 207 U.S. 161, 176 (1907) (a federal court will "have nothing to do with the interpretation of the Constitution of the state and the conformity of the enactment of the assembly to that Constitution."); *R.R. Comm'n v. Los Angeles R. Co.*, 280 U.S. 145, 156 (1929) ("This court is bound by the decisions of the highest courts of the States as to the powers of their municipalities.").

25

## IV.  At least five sister circuits, and cases in this Circuit, are in direct conflict with *South Lake Tahoe*.

Several sister circuits have declined to adopt a per se standing bar. *E.g., Exeter-West Greenwich Reg'l Sch. Dist. v. Pontarelli*, 788 F.2d 47 (1st Cir. 1986) (school district may bring First Amendment claims against state); *Tweed-New Haven Airport Authority v. Tong*, 930 F.3d 65, 72 (2d Cir. 2019) ("The view that subdivisions were broadly prevented from suing a state was put to rest in *Gomillion v. Lightfoot* . . . ."); *Rogers v. Brockette*, 588 F.2d 1057, 1068 (5th Cir. 1979) ("[W]e do not think [the cases] hold that a municipality never has standing to sue the state of which it is a creature."); *South Macomb Disposal Authority v. Township of Washington*, 790 F.2d 500, 504 (6th Cir.1986) (allowing political subdivision to bring Fourteenth Amendment claims against city); *United States v. State of Alabama*, 791 F.2d 1450 (11th Cir.1986) (state university may bring Fourteenth Amendment claims against state).

Even this Circuit's opinion in *Carlsbad Union Sch. Dist. v. Rafferty*, 429 F.2d 337 (9th Cir. 1970) is inconsistent with *South Lake Tahoe*, allowing a school district to sue the state.

**V.    The panel held, unsupported by any authority, that state-compelled speech is nonjusticiable if the aggrieved plaintiff is a city councilmember.**

Relying on *South Lake Tahoe*, the panel reasoned that, just as voting is not communicative conduct entitled to First Amendment protection because it is a function of holding office as a councilmember, so making a state-mandated public statement also carries no constitutional protection. But the panel failed to follow the reasoning of *Nevada Comm'n on Ethics v. Carrigan*, 564 U.S. 117, 126-127 (2011), holding that the reason that the First Amendment does not protect councilmember votes is because voting itself is not "an act of communication." Here, the state mandates not only their vote, but that the councilmembers state the *reasons* for their vote—reasons which, from the councilmembers' person standpoint, are false.

## VI.    CONCLUSION

*South Lake Tahoe* is an outlier and inconsistent with Supreme Court authority and five sister circuits. It should be revisited.

Respectfully submitted,

November 13, 2024                 MICHAEL E. GATES, CITY ATTORNEY

By:  /s/ Michael E. Gates
Michael E. Gates

*Attorneys for Plaintiffs and Appellants City of Huntington Beach, Huntington Beach City Council, Mayor of Huntington Beach, Tony Strickland, and Mayor Pro Tem of Huntington Beach, Gracey Van Der Mark*

CERTIFICATE OF COMPLIANCE

## UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

**Form 11. Certificate of Compliance for Petitions for Rehearing/Responses**

*Instructions for this form:*
*http://www.ca9.uscourts.gov/forms/form11instructions.pdf*

**9th Cir. Case Number(s)**       23-3694

I am the attorney or self-represented party.

I certify that pursuant to Circuit Rule 35-4 or 40-1, the

attached **petition for rehearing en banc** is *(select one)*:

[XX] Prepared in a format, typeface, and type style that complies

with Fed. R. App. P. 32(a)(4)-(6) and **contains the following**

**number of words: _____.**

*(Petitions and responses must not exceed 4,200 words)*

**OR**

[  ] In compliance with Fed. R. App. P. 32(a)(4)-(6) and does not
exceed 15 pages.

**Signature** */s/ Michael E. Gates*        **Date** Nov 13, 2024
*(use "s/[typed name]" to sign electronically-filed documents)*

*Feedback or questions about this form? Email us at forms@ca9.uscourts.gov*

**Form 11**                                            *Rev. 12/01/21*

29

**CERTIFICATE OF SERVICE**

*City of Huntington Beach v. Newsom*

Case No. 23-3694
Dist. Ct. No. 8:23-cv-00421

I certify that on November 13, 2024, a copy of the document above, titled Petition for Rehearing En Banc, filed in the court referenced above, was served by Notice of Electronic Filing automatically generated by that Court's electronic filing and service facilities.

By:  */s/ Michael E. Gates*

Michael E. Gates

**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

**FILED**

OCT 30 2024

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| CITY OF HUNTINGTON BEACH, a California Charter City and Municipal Corporation; HUNTINGTON BEACH CITY COUNCIL; TONY STRICKLAND, Mayor of Huntington Beach; GRACEY VAN DER MARK, Mayor Pro Tem of Huntington Beach, | No. 23-3694<br><br>D.C. No.<br>8:23-cv-00421-FWS-ADS<br><br>MEMORANDUM* |
|         Plaintiffs - Appellants, | |
|  v. | |
| GAVIN NEWSOM, in his official capacity as Governor of the State of California; GUSTAVO VELASQUEZ, in his official capacity as Director of the State of California Department of Housing and Community Development; CALIFORNIA DEPARTMENT OF HOUSING AND COMMUNITY DEVELOPMENT; DOES, 1-50, inclusive; SOUTHERN CALIFORNIA ASSOCIATION OF GOVERNMENT, | |
|         Defendants - Appellees. | |

Appeal from the United States District Court
for the Central District of California
Fred W. Slaughter, District Judge, Presiding

---

    \*     This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

Argued and Submitted October 21, 2024
Pasadena, California

Before: TALLMAN, R. NELSON, and BRESS, Circuit Judges.

The City of Huntington Beach and several City officials sued to challenge the
constitutionality of certain California housing laws.  The district court dismissed
their complaint, holding that under circuit precedent, each Plaintiff lacked standing
to raise federal constitutional claims against the state.  *See City of S. Lake Tahoe v.
Cal. Tahoe Reg'l Plan. Agency*, 625 F.2d 231 (9th Cir. 1980).  We have jurisdiction
under 28 U.S.C. § 1291, and we affirm.

1.    The City's claims are foreclosed by our decision in *South Lake Tahoe*,
which forbids political subdivisions and their officials from challenging the
constitutionality of state statutes in federal court.  625 F.2d at 233–34, 238.  We have
consistently applied that rule ever since.  *See, e.g.*, *Burbank-Glendale-Pasadena
Airport Auth. v. City of Burbank*, 136 F.3d 1360, 1364 (9th Cir. 1998) ("This
court . . . has not recognized any exception to the per se [standing bar], and the broad
language of *South Lake Tahoe* appears to foreclose the possibility of our doing so.").

We are not persuaded by the City's efforts to differentiate *South Lake Tahoe*.
The City argues that our standing bar does not apply because Huntington Beach is a
charter city, which it claims is not a "political subdivision."  Yet our precedent has
applied *South Lake Tahoe*'s standing rule to California's charter cities.  *See Burbank*,
136 F.3d at 1364.  And recent California appellate decisions interpreting the term

2

23-3694

"political subdivision" in specific state statutes do not undermine *Burbank*'s analysis. *See, e.g.*, *City of Redondo Beach v. Padilla*, 46 Cal. App. 5th 902, 912–13 (2020).

In any case, the City's federal standing does not turn on the intricacies of California law. *Hollingsworth v. Perry*, 570 U.S. 693, 715 (2013) ("[S]tanding in federal court is a question of federal law, not state law."). No matter how California categorizes charter cities, they remain subordinate political bodies, not sovereign entities. *See Reynolds v. Sims*, 377 U.S. 533, 575 (1964). That subsidiary status brings charter cities within the rule of *South Lake Tahoe*, which relied on Supreme Court precedent holding that municipal corporations such as the City of Huntington Beach lack federal constitutional rights against their parent states. 625 F.2d at 233 (citing *Williams v. Mayor & City Council of Balt.*, 289 U.S. 36, 40 (1933) ("A municipal corporation, created by a state for the better ordering of government, has no privileges or immunities under the Federal Constitution which it may invoke in opposition to the will of its creator.")).

2.    The City officials also lack standing. Under *South Lake Tahoe*, public officials cannot assert claims in federal court based on "private constitutional predilections." 625 F.2d at 238. The City officials' objections to the Statement of Overriding Considerations are the kinds of "personal dilemmas" that *South Lake Tahoe* rejected as the basis for individual standing. *Id.* at 237. Moreover, Plaintiffs

do not explain how they suffered a constitutional injury absent their roles as local officials. *See Thomas v. Mundell*, 572 F.3d 756, 760–61 (9th Cir. 2009). So while the City officials retain personal free speech rights, *see, e.g.*, *Lindke v. Freed*, 601 U.S. 187, 196 (2024), they cannot invoke those rights to avoid executing "laws within their charge," *South Lake Tahoe*, 625 F.2d at 238.

Because each Plaintiff lacks standing, we need not consider whether abstention is proper under *Younger v. Harris*, 401 U.S. 37 (1971).

**AFFIRMED.**[1]

---

[1] We grant Appellants' motion for judicial notice, Dkt. 13, of the Petition for Writ of Mandate filed in the California Court of Appeal. *See U.S. ex rel. Robinson Rancheria Citizens Council v. Borneo, Inc.*, 971 F.2d 244, 248 (9th Cir. 1992).