No. 23-3694

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

CITY OF HUNTINGTON BEACH, *et al.*,
*Plaintiffs-Appellants*,

v.

GAVIN NEWSOM, *et al.*,
*Defendants-Appellees*.

**On Appeal from the United States District Court
for the Central District of California**
No. 8:23-cv-00421-FWS-ADS
The Honorable Fred W. Slaughter

## RESPONSE TO PETITION FOR REHEARING EN BANC

ROB BONTA
  *Attorney General of California*
MICHAEL J. MONGAN
  *Solicitor General*
HELEN H. HONG
  *Principal Deputy Solicitor General*
DANIEL A. OLIVAS
  *Senior Assistant Attorney General*

SAMUEL T. HARBOURT
  *Deputy Solicitor General*
DAVID PAI
  *Supervising Deputy Attorney General*
THOMAS P. KINZINGER
MATTHEW T. STRUHAR
  *Deputy Attorneys General*
CARA M. NEWLON
  *Associate Deputy Solicitor General*

CALIFORNIA DEPARTMENT OF JUSTICE
455 Golden Gate Avenue, Suite 11000
San Francisco, CA  94102-7004
(415) 510-3919
Samuel.Harbourt@doj.ca.gov
*Attorneys for Defendants & Appellees*

January 13, 2025

# TABLE OF CONTENTS

**Page**

Introduction ..................................................................................................1

Statement .....................................................................................................1

Argument .....................................................................................................4

I.    There is no basis to revisit this Court's decades-old precedent as to the standing of government officials .......................................................4

II.   En banc review is not warranted as to the scope of political subdivisions' standing to sue their parent State ...............................8

    A.   The petition vastly overstates the extent and practical effect of any conflict with the decisions of other courts...................................8

    B.   This case would be an exceptionally poor vehicle for en banc review .........................................................................................14

Conclusion .................................................................................................18

i

# TABLE OF AUTHORITIES

**Page**

CASES

*Ariz. State Legislature v. Ariz. Indep. Redistricting Comm'n*
    576 U.S. 787 (2015)....................................................................14

*Bigelow v. Virginia*
    421 U.S. 809 (1975)....................................................................16

*Bd. of Educ. v. Allen*
    392 U.S. 236 (1968)..................................................................5, 6

*Bonner v. City of Prichard, Ala.*
    661 F.2d 1206 (11th Cir. 1981) (en banc) ......................................12

*Burbank-Glendale-Pasadena Airport Auth. v. City of Burbank*
    136 F.3d 1360 (9th Cir. 1998) ...............................................8, 14

*Carlsbad Union Sch. Dist. of San Diego Cnty. v. Rafferty*
    429 F.2d 337 (9th Cir. 1970) .......................................................9

*Charleston v. Pub. Serv. Comm'n of W. Virginia*
    57 F.3d 385 (4th Cir. 1995) .......................................................10

*City of Hugo v. Nichols*
    656 F.3d 1251 (10th Cir. 2011) ..................................................11

*City of San Juan Capistrano v. Cal. Pub. Utilities Comm'n*
    937 F.3d 1278 (9th Cir. 2019) ........................................11, 14, 16

*City of S. Lake Tahoe v. Cal. Tahoe Reg'l Plan. Agency*
    625 F.2d 231 (9th Cir. 1980) ...............................................*passim*

*Donelon v. Louisiana Div. of Admin. L. ex rel. Wise*
    522 F.3d 564 (5th Cir. 2008) .....................................................12

*Drake v. Obama*
    664 F.3d 774 (9th Cir. 2011) ......................................................5

## TABLE OF AUTHORITIES
### (continued)

Page

*Exeter-West Greenwich Reg'l Sch. Dist. v. Pontarelli*
   788 F.2d 47 (1st Cir. 1986) .................................................................10

*Gomillion v. Lightfoot*
   364 U.S. 339 (1960) .........................................................................13

*Haaland v. Brackeen*
   599 U.S. 255 (2023) ...........................................................................5

*Hunter v. City of Pittsburgh*
   207 U.S. 161 (1907) .........................................................................13

*Indian Oasis-Baboquivari Unified Sch. Dist. No. 40 v. Kirk*
   91 F.3d 1240 (9th Cir. 1996) ........................................................10, 13

*Kerr v. Polis*
   20 F.4th 686 (10th Cir. 2021) (en banc) ..............................11, 12, 16

*Lujan v. Defenders of Wildlife*
   504 U.S. 555 (1992) .........................................................................13

*Nat'l Pork Producers Council v. Ross*
   598 U.S. 356 (2023) .........................................................................17

*Nevada Comm'n on Ethics v. Carrigan*
   564 U.S. 117 (2011) ...........................................................................6

*Ocean Cnty. Bd. of Comm'rs v. Att'y Gen. of N.J.*
   8 F.4th 176 (3d Cir. 2021) ...............................................................12

*People v. Huntington Beach*
   No. 30-2023-01312235-CU-WM-CJC (Orange Cnty. Super. Ct.
   Mar. 8, 2023) .....................................................................................3

*Regents of the Univ. of Cal. v. Doe*
   519 U.S. 425 (1997) ...........................................................................9

# TABLE OF AUTHORITIES
### (continued)

**Page**

*Rogers v. Brockette*
    588 F.2d 1057 (5th Cir. 1979) ............................................................12

*Ruhrgas AG v. Marathon Oil*
    526 U.S. 574 (1999)........................................................................15

*Sacramento Homeless Union v. City of Sacramento*
    115 F.4th 1149 (9th Cir. 2024) ............................................................16

*Sch. Bd. Of Richmond, Va. v. Baliles*
    829 F.2d 1308 (4th Cir. 1987) ............................................................10

*Smith v. Indiana*
    191 U.S. 138 (1903)..........................................................................5

*S. Macomb Disposal Auth. v. Washington Twp.*
    790 F.2d 500 (6th Cir. 1986) ............................................................10

*Steel Co. v. Citizens for a Better Env't*
    523 U.S. 83 (1998)....................................................................10, 15

*Thomas v. Mundell*
    572 F.3d 756 (9th Cir. 2009) ..............................................................4

*Tiburon Open Space Comm. v. Cnty. of Marin*
    78 Cal. App. 5th 700 (2022) ................................................................7

*Tweed-New Haven Airport Auth. v. Tong*
    930 F.3d 65 (2d Cir. 2019) ................................................................12

*United States v. Alabama*
    791 F.2d 1450 (11th Cir. 1986) ..........................................................12

*United States v. ICC*
    337 U.S. 426 (1949)........................................................................14

*United States v. Texas*
    599 U.S. 670 (2023)........................................................................13

iv

## TABLE OF AUTHORITIES
### (continued)

Page

*Washington v. Seattle Sch. Dist. No. 1*
  458 U.S. 457 (1982)..................................................................13

*Williams v. Mayor & City Council of Baltimore*
  289 U.S. 36 (1933)...................................................................16

*Younger v. Harris*
  401 U.S. 37 (1971)..........................................................4, 15, 16

**STATUTES AND COURT RULES**

Cal. Pub. Res. Code § 21081 ...............................................7

2018 Cal. Stat. 5526............................................................2

Fed. R. App. P. 40(b)(2) .....................................................6

**OTHER AUTHORITIES**

13B Wright, Miller et al., Fed. Prac. & Proc. Juris. (3d ed., updated
  2024) .................................................................................5

Cal. Dep't of Hous. & Cmty. Dev., *Housing Element Review &
  Compliance Report*, https://tinyurl.com/4fpyces2................2

Cal. Dep't. of Hous. & Cmty. Dev., *Prohousing Designation
  Program: Prohousing Designated Jurisdictions* (Dec. 16, 2024),
  https://tinyurl.com/3cp5u537 .............................................3

Huntington Beach City Council, Study Session (Marc. 19, 2024),
  https://tinyurl.com/yvb72ncu..............................................7

Johnson & McGhee, Pub. Policy Inst. of Cal., *Three Decades of
  Housing Challenges in the Golden State* (Dec. 3, 2024),
  https://tinyurl.com/2p8scmax .............................................2

**TABLE OF AUTHORITIES**
**(continued)**

**Page**

McGhee et al., Pub. Policy Inst. of. Cal., *New Housing Fails to Make Up for Decades of Undersupply* (Dec. 3, 2021), https://tinyurl.com/2p6k3247.............................................................1, 2

## INTRODUCTION

Plaintiffs are the City of Huntington Beach and several local officials.  They seek en banc review of decades-old circuit precedent on the standing of public officials and political subdivisions to challenge state laws in federal court.  As to the standing of public officials, plaintiffs identify no circuit conflict or any other persuasive basis for en banc review.  As to the standing of political subdivisions, plaintiffs exaggerate the extent and practical importance of the divergence between this Court's precedent and that of other circuits.  This Court has long recognized a per se bar on federal constitutional challenges to state laws brought by political subdivisions against their parent State.  Several other courts of appeals allow political subdivisions to bring Supremacy Clause challenges—but not other types of constitutional claims.  Because plaintiffs have not brought a Supremacy Clause challenge, however, this case would be an exceptionally poor vehicle for addressing the narrow issue that has divided the circuits.  Several other features of this case also make it a poor candidate for en banc review, including the weakness of plaintiffs' underlying claims on the merits.  The petition should be denied.

## STATEMENT

California faces a crisis of housing affordability.  In recent decades, the State's population growth far outpaced the growth in housing stock.  *See* McGhee et al., Pub. Policy Inst. of Cal., *New Housing Fails to Make Up for Decades of*

1

*Undersupply* (Dec. 3, 2021), https://tinyurl.com/2p6k3247.  The State "should have been building 70,000 to 110,000 more housing units beyond what it actually built in each year from 1980 to 2010," bringing the State's shortfall over that period to approximately 3.5 million homes.  *Id.*  As a consequence, housing costs skyrocketed, leading the State to have one of the Nation's highest rates of homelessness and one of the lowest rates of home ownership.  *See* Johnson & McGhee, Pub. Policy Inst. of Cal., *Three Decades of Housing Challenges in the Golden State* (Dec. 3, 2024), https://tinyurl.com/2p8scmax.

To address these harms, the Legislature enacted a series of reforms to state housing law.  As relevant here, the Legislature updated the State's "Housing Element Law" to ensure that political subdivisions across California regularly adopt and update plans—called "housing elements"—that are designed to facilitate increased housing development.  *See, e.g.*, 2018 Cal. Stat. 5526-5534; *see also* State Answering Br. 17-20.  Many political subdivisions have embraced their obligations under the Housing Element Law, helping to put California on a path toward improved housing affordability.  *See* Cal. Dep't of Hous. & Cmty. Dev.,

*Housing Element Review & Compliance Report*, https://tinyurl.com/4fpyces2.[1] But a small minority has resisted necessary reforms.  *See id.*

One of those political subdivisions is the City of Huntington Beach.  In recent years, it has categorically refused to adopt a compliant housing element.  *See, e.g.*, State Answering Br. 20-21.  After providing the City multiple opportunities to change course, *see, e.g.*, 3-ER-541, the State sued in state court to obtain an order directing the City to come into compliance, *see People v. Huntington Beach*, No. 30-2023-01312235-CU-WM-CJC (Orange Cnty. Super. Ct. Mar. 8, 2023).  The day after the State filed its enforcement action, Huntington Beach and several local officials initiated this case in federal district court.  4-ER-685.  Plaintiffs sought an injunction blocking enforcement of the Housing Element Law under the First Amendment, the Fourteenth Amendment's Due Process Clause, the dormant Commerce Clause, and several state laws.  4-ER-685-743.  The district court dismissed the federal claims on standing grounds, *see* 1-ER-11-13, and declined to exercise supplemental jurisdiction over plaintiffs' state-law claims, *see* 1-ER-13-15.  A panel of this Court affirmed in an unpublished opinion.  Opn. 2-4.  Agreeing

---

[1] *See also* Cal. Dep't of Hous. & Cmty. Dev., *Prohousing Designation Program: Prohousing Designated Jurisdictions* (Dec. 16, 2024), https://tinyurl.com/3cp5u537.

with the district court that plaintiffs lack standing, the panel declined to "consider whether abstention is proper under *Younger v. Harris*."  Opn. 4.

## ARGUMENT

The panel rejected two theories of standing advanced by plaintiffs:  standing on the part of city officials, *see* Opn. 3-4, and standing on the part of the City of Huntington Beach, *see id.* at 2-3.  While plaintiffs are not entirely clear which holding they challenge, they appear to request en banc review of both standing determinations.  *See, e.g.*, Pet. 27 (discussing standing of "city councilmember[s]"); *id.* at 13 (discussing standing of "political subdivisions").  But both holdings are grounded in longstanding circuit precedent.  And neither provides an appropriate basis for en banc review.

## I.    THERE IS NO BASIS TO REVISIT THIS COURT'S DECADES-OLD PRECEDENT AS TO THE STANDING OF GOVERNMENT OFFICIALS

For over forty years, this Circuit's precedent has directed that public officials lack standing to challenge the constitutionality of state laws if they assert "'official' rather than 'personal'" interests or injuries.  *Thomas v. Mundell*, 572 F.3d 756, 761 (9th Cir. 2009) (quoting *City of S. Lake Tahoe v. Cal. Tahoe Reg'l Plan. Agency*, 625 F.2d 231, 238 (9th Cir. 1980)).  An interest or injury is "official" for Article III purposes where the sole asserted basis for standing is the official's preference not to "perform[] duties," such as the enforcement of state law, "that he perceives to be unconstitutional."  *Thomas*, 572 F.3d at 761 (citing

4

*Smith v. Indiana*, 191 U.S. 138 (1903)).  It is the "*role[]*" of public officials to enforce state law.  Opn. 4 (emphasis added).  Officials suffer no legally cognizable injury merely because "they wish not to" perform that role due to "private constitutional predilections."  *S. Lake Tahoe*, 625 F.2d at 238; *cf. Haaland v. Brackeen*, 599 U.S. 255, 295 (2023) (mere "complicit[y] in enforcing" a law does not provide standing to challenge it).

The Supreme Court's decision in *Board of Education v. Allen*, 392 U.S. 236 (1968), is not to the contrary.  *Cf.* Pet. 13.  A short footnote in *Allen* suggests that public officials have standing if they must "choose between violating their oath [to uphold the Constitution] and . . . refus[ing] to comply with . . . the [challenged] statute."  392 U.S. at 241 n.5.  But because the Supreme Court "significantly tightened standing requirements" in the years after *Allen*, its brief discussion of standing is no longer "binding Supreme Court precedent."  *S. Lake Tahoe*, 625 F.2d at 236, 237; *see also Drake v. Obama*, 664 F.3d 774, 780 (9th Cir. 2011).  Under modern standing doctrine, "abstract outrage at the enactment of an unconstitutional law" is not sufficient to support standing.  *S. Lake Tahoe*, 625 F.2d at 237.  Other circuits have reached similar conclusions about the precedential status of *Allen*'s footnote.  *See* 13B Wright, Miller et al., Fed. Prac. & Proc. Juris.

§ 3531.11.3 n.16 (3d ed., updated 2024) (collecting examples).  And plaintiffs cite

no authority—in this circuit or elsewhere—inconsistent with those decisions.[2]

Plaintiffs instead challenge the panel's case-specific application of this

Court's precedent on public officials' standing.  But a request for case-specific

error correction is not a proper ground for en banc review.  *See generally* Fed. R.

App. P. 40(b)(2).  In any event, plaintiffs' arguments fail.  They appear to ask the

Court to recognize a special exception for First Amendment compelled-speech

claims.  *See* Pet. 27.  But plaintiffs provide no support for treating those claims

differently from all other constitutional challenges brought by public officials.

They cite only one decision in support of their argument:  *Nevada Commission on*

*Ethics v. Carrigan*, 564 U.S. 117 (2011).  But *Carrigan* merely held that

"restrictions upon legislators' voting are not restrictions upon legislators' protected

speech."  *Id.* at 125.  Nothing in *Carrigan* addresses the extent to which legislators

or other officials have standing to raise First Amendment claims.

Plaintiffs' underlying compelled-speech claim is also meritless.  They object

to issuing a "statement of overriding considerations" when adopting a housing

---

[2] Even if *Allen* remained good law, it would not support standing here.  In *Allen*,
the officials' refusal to enforce the challenged law was "likely to bring their
expulsion from office."  392 U.S. at 241 n.5; *see S. Lake Tahoe*, 625 F.2d at 240
(Sneed, J., concurring).  Plaintiffs have not argued they face any such threat.

6

element.  Pet. 15; *see supra* p. 2.[3]  But plaintiffs fail to explain how that statement is any different in kind from the many plans, reports, and certifications that public officials are routinely required by law to issue.  And nothing in California law requires local officials to express *agreement* with state housing laws.  *See* State Answering Br. 51-54.  Plaintiffs are free to issue a simple, unadorned statement noting that they are approving a housing element in keeping with the requirements of state law.  *Id.* at 51 (citing Cal. Pub. Res. Code § 21081(b)).  Plaintiffs also remain free to criticize state housing policies—a freedom that they have not hesitated to exercise.  *See, e.g.*, 3-ER-316; 3-ER-354-355; Huntington Beach City Council, Study Session 2:37-2:50 (Marc. 19, 2024), https://tinyurl.com/yvb72ncu (statement of Councilmember Strickland) ("We've been . . . forced to follow nonsensical housing laws.").  But the First Amendment does not allow plaintiffs to evade their state-law obligations to expand housing availability.

---

[3] The California Environmental Quality Act sometimes requires government agencies to issue a "statement of overriding considerations" when approving a policy or project—such as a housing element—that will have significant environmental effects.  *See, e.g.*, *Tiburon Open Space Comm. v. Cnty. of Marin*, 78 Cal. App. 5th 700, 732-733 (2022).

## II. EN BANC REVIEW IS NOT WARRANTED AS TO THE SCOPE OF POLITICAL SUBDIVISIONS' STANDING TO SUE THEIR PARENT STATE

Plaintiffs also seek en banc review of circuit precedent holding that political subdivisions lack standing in federal court to challenge state laws under the federal Constitution. *See, e.g.*, *S. Lake Tahoe*, 625 F.2d at 233-234. But plaintiffs overstate the degree to which other courts have disagreed with that rule. And this case would be an exceptionally poor vehicle for the Court to address the narrow division of authority that does exist.

### A. The Petition Vastly Overstates the Extent and Practical Effect of Any Conflict with the Decisions of Other Courts

1. Plaintiffs' principal argument in support of standing is that, as a "charter city" under California law, Huntington Beach does not qualify as a "political subdivision" and therefore is not barred by circuit precedent from bringing this suit. *See, e.g.*, Pet. 23-25; Opening Br. 48-59. But plaintiffs' understanding of state law is flawed. *See, e.g.*, State Answering Br. 34-38. This Court long ago rejected the argument that a California "charter city . . . is not a political subdivision of the state for purposes of its ability to challenge a state statute" under this Court's standing precedent. *Burbank-Glendale-Pasadena Airport Auth. v. City of Burbank*, 136 F.3d 1360, 1364 (9th Cir. 1998). And plaintiffs identify no decisions holding otherwise from this Court or any other court of appeals.

8

The only federal precedent that plaintiffs invoke in support of their argument "hold[s] that state sovereign immunity applies to 'arms of the state,' but not to its 'political subdivisions.'"  Pet. 22.  But Huntington Beach would qualify as a "political subdivision" under that precedent.  *See, e.g.*, *Regents of the Univ. of Cal. v. Doe*, 519 U.S. 425, 430 n.6 (1997).  And plaintiffs provide no basis for consulting sovereign immunity-related cases when addressing the distinct question of Article III standing presented in this case.  Just because courts sometimes "look to state law" when evaluating sovereign immunity, Pet. 24, does not mean that there is any sensible reason to do so in the way that plaintiffs request here.

2.  Plaintiffs also ask the Court to abandon its "per se bar" on the standing of political subdivisions to challenge state laws on federal constitutional grounds. Pet. 11 (citing *S. Lake Tahoe*, 625 F.2d at 233).  According to plaintiffs, that per se approach conflicts with decisions of this Court, other federal appellate courts, and the U.S. Supreme Court.  *See, e.g.*, Pet. 16-18, 26.  But plaintiffs overstate the scope and practical importance of any conflict.

As to this Court's own precedent, the only case invoked by plaintiffs is *Carlsbad Union School District of San Diego County v. Rafferty*, 429 F.2d 337, 338 (9th Cir. 1970).  But there, "[t]he sole question presented" involved the scope of a federal appropriations law.  *Id.*  The Court never addressed standing.  "It is well settled . . . that the exercise of jurisdiction in a case is not precedent for the

9

existence of jurisdiction" "where the merits were resolved"—but where jurisdiction was not addressed.  *Indian Oasis-Baboquivari Unified Sch. Dist. No. 40 v. Kirk*, 91 F.3d 1240, 1243 (9th Cir. 1996), *vacated on other grounds*, 109 F.3d 634 (9th Cir. 1997) (en banc); *see Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 91 (1998) ("drive-by jurisdictional rulings . . . have no precedential effect").

Several of the out-of-circuit decisions invoked by plaintiffs likewise fail to address the standing questions raised by plaintiffs' en banc petition.[4]  And one decision cited by plaintiffs actually *supports* the rule that this Court has long applied.  In *South Macomb Disposal Authority v. Washington Township*, 790 F.2d 500, 505 (6th Cir. 1986), the Sixth Circuit pointed to this Court's decision in *South Lake Tahoe*, 625 F.2d at 233, as persuasive authority in support of its determination that one political subdivision could not sue another political subdivision on Fourteenth Amendment grounds.

Plaintiffs are correct that several other circuits have disagreed in part with this Court's reasoning in *South Lake Tahoe* and related cases.  *See* Pet. 26.  But the practical difference between this Court's approach and that of other circuits is

---

[4] *See Exeter-West Greenwich Reg'l Sch. Dist. v. Pontarelli*, 788 F.2d 47, 54 (1st Cir. 1986) (addressing justiciability without considering whether plaintiff's status as political subdivision might be relevant to standing); *Sch. Bd. Of Richmond, Va. v. Baliles*, 829 F.2d 1308, 1310-1311 (4th Cir. 1987) (similar); *see also Charleston v. Pub. Serv. Comm'n of W. Virginia*, 57 F.3d 385, 390 (4th Cir. 1995) ("assum[ing]—without deciding—that the cities ha[d] standing").

more limited than plaintiffs suggest.  As Judge Nelson recently explained, the

principal source of disagreement is whether political subdivisions can bring

preemption challenges to state laws under the Supremacy Clause.  *See City of San*

*Juan Capistrano v. Cal. Pub. Utilities Comm'n*, 937 F.3d 1278, 1283-1284 (9th

Cir. 2019) (R. Nelson, J., concurring).  That narrow division of authority makes no

difference where, as here, plaintiffs have not raised a Supremacy Clause challenge.

In the Tenth Circuit, for example, plaintiffs' claims would fail under that

court's categorical bar on suits by political subdivisions against their parent State

under *any* "constitutional provisions that 'provide substantive restraints on state

action.'"  *Kerr v. Polis*, 20 F.4th 686, 701 (10th Cir. 2021) (en banc); *see, e.g.*, *City*

*of Hugo v. Nichols*, 656 F.3d 1251, 1257 (10th Cir. 2011) (barring dormant

Commerce Clause claim).  The only exception recognized by the Tenth Circuit is

for Supremacy Clause claims—and even then, there is only a "narrow pathway . . .

to sue."  *Kerr*, 20 F.4th at 694.  To bring a Supremacy Clause claim, a political

subdivision must identify "clear congressional language," *id.* at 698, showing that

"Congress specifically intended to create a cause of action for political

subdivisions," *id.* at 697; *see id.* at 698 (emphasizing that "[p]olitical subdivisions

have a unique relationship with their parent states" and that judiciary should be "hesitant to infer that Congress intended to intrude on internal state matters").[5]

The law in the Second, Third, and Fifth Circuits is similar.  In *Tweed-New Haven Airport Authority v. Tong*, 930 F.3d 65 (2d Cir. 2019), the Second Circuit acknowledged its longstanding precedent denying "a political subdivision . . . standing to sue its state under the Fourteenth Amendment," *id.* at 73 n.7, while allowing claims to proceed under the Supremacy Clause, *id.* at 73; *see Ocean Cnty. Bd. of Comm'rs v. Att'y Gen. of N.J.*, 8 F.4th 176, 180 (3d Cir. 2021) (similar). The Fifth Circuit drew the same line decades ago in *Rogers v. Brockette*, 588 F.2d 1057, 1069-1071 (5th Cir. 1979).  More recently, however, the Fifth Circuit referred to *Rogers* as "anomalous" and "not very convincing[]" when compared to this Court's "per se rule that political subdivisions may not sue their parent states under any constitutional provision."  *Donelon v. Louisiana Div. of Admin. L. ex rel. Wise*, 522 F.3d 564, 567 & n.6 (5th Cir. 2008).[6]

---

[5] In the Tenth Circuit's view, "political subdivision standing is an inquiry going to the merits of the case, not the court's jurisdiction."  *Kerr*, 20 F.4th at 696; *but cf. id.* at 696 n.4 (explaining that this distinction has little effect on "the actual substance of the inquiry").

[6] In *United States v. Alabama*, 791 F.2d 1450, 1455 (11th Cir. 1986), the court merely recognized that pre-1981 Fifth Circuit decisions, including *Rogers*, establish binding Eleventh Circuit precedent.  *See generally Bonner v. City of Prichard, Ala.*, 661 F.2d 1206, 1210 (11th Cir. 1981) (en banc).  The Eleventh Circuit has not endorsed *Rogers* as a matter of first principles.  *Contra* Pet. 26.

Plaintiffs also fail to identify any conflict with U.S. Supreme Court precedent. Of the four principal decisions invoked by plaintiffs, *see, e.g.*, Pet. 20-23, three reach federal constitutional claims on the merits without addressing standing. *See Washington v. Seattle Sch. Dist. No. 1*, 458 U.S. 457, 467-487 (1982); *Gomillion v. Lightfoot*, 364 U.S. 339, 341-348 (1960); *Hunter v. City of Pittsburgh*, 207 U.S. 161, 176 (1907). Those decisions are "not precedent for the exercise of jurisdiction." *Indian Oasis-Baboquivari*, 91 F.3d at 1243; *see supra* pp. 9-10.[7] And while *Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992), sets forth general principles of standing, it says nothing inconsistent with the challenged Ninth Circuit precedent on the standing of political subdivisions to sue their parent State.

In arguing otherwise, *see, e.g.*, Pet. 16-17, plaintiffs overlook the requirement that a litigant's "injury in fact" must be "legally cognizable." *Lujan*, 504 U.S. at 578; *see, e.g.*, *United States v. Texas*, 599 U.S. 670, 676 (2023). It is not at all clear that political subdivisions suffer a legally cognizable injury merely because a State requires them to carry out laws that they would prefer not to enforce. Political subdivisions are "subordinate governmental instrumentalities created by

---

[7] Plaintiffs are incorrect that *South Lake Tahoe* and related cases violate *Hunter*'s "principle of non-interference" with "a state's internal political organization." Pet. 9, 13 (citing *Hunter*, 207 U.S. at 176). This Court's precedent merely denies political subdivisions standing to sue their parent States in federal court. *Supra* p. 8. States are free to organize themselves as they see fit.

13

the State to assist in the carrying out of state governmental functions." *Ysursa v. Pocatello Educ. Ass'n*, 555 U.S. 353, 362 (2009) (internal quotation marks omitted).  If public officials suffer no legally cognizable injury merely because they are required to do their jobs, *see supra* pp. 4-5, there are at least serious questions as to whether political subdivisions suffer any legally cognizable injury when they are required to do theirs.  *Cf. San Juan Capistrano*, 937 F.3d at 1284 (R. Nelson, J., concurring) ("it may well be that [this Court's] per se rule . . . is the correct one"); *Burbank*, 136 F.3d at 1365 (Kozinski, J., concurring) (similar).[8]

### B.  This Case Would Be an Exceptionally Poor Vehicle for En Banc Review

Even if the Court wished to revisit its precedent on the standing of political subdivisions to sue their parent State, it would be important to await a proper vehicle before doing so.  As Judge Nelson recently suggested, an ideal vehicle would allow the en banc Court to focus on the principal issue that has led to inter-circuit disagreement:  whether and to what extent political subdivisions can bring *preemption* claims.  *See San Juan Capistrano*, 937 F.3d at 1283-1284 (R. Nelson,

---

[8] To be sure, different agencies or instrumentalities within the same government do sometimes have standing to sue one another.  *See, e.g.*, *Ariz. State Legislature v. Ariz. Indep. Redistricting Comm'n*, 576 U.S. 787, 804 (2015); *United States v. ICC*, 337 U.S. 426, 430-431 (1949).  But no Supreme Court precedent squarely resolves how that case law applies in the context of controversies between political subdivisions and their parent State.

14

J., concurring).  It would be anomalous for the Court to probe and address that issue in a case like this one where plaintiffs have not brought a preemption claim.

Other features of the case would further complicate the Court's ability to address questions relevant to the narrow disagreement among the circuits.  First, plaintiffs' filings to date have largely focused on questions of California state law involving the status and powers of charter cities.  *See, e.g.*, Opening Br. 46-60 (citing the California Constitutions of 1849 and 1879 and numerous state appellate decisions dating back to the nineteenth century).  Plaintiffs' petition suggests that if the Court granted en banc review, they would take the same approach at oral argument and in any supplemental briefing ordered by the Court.  *See, e.g.*, Pet. 8-9, 23-24.  But no circuit has adopted a standing rule that turns on a political subdivision's status and authority under state law.  *Supra* pp. 8-9.  Briefing and argument on that subject would not help the Court in evaluating whether to maintain this Court's current rule or adopt the approach of one of its sister circuits.

Second, the *Younger* abstention doctrine requires dismissal of plaintiffs' suit on jurisdictional grounds.  *See* State Answering Br. 44-47; *Steel Co.*, 523 U.S. at 100 n.3 (treating *Younger* as jurisdictional).  While that would not prevent the en banc Court from reaching questions of Article III standing, *see generally Ruhrgas AG v. Marathon Oil*, 526 U.S. 574, 585 (1999), it would limit the Court's ability to provide the type of guidance that the Tenth Circuit's recent en banc opinion in

15

*Kerr* offered as to *nonjurisdictional* limits on claims brought by political subdivisions. *See* 20 F.4th at 696-699. If the Court wishes to have the option of offering similar guidance, it should await a case without this jurisdictional defect.

Finally, "en banc review—with its considerable expenditure of time and resources—is better reserved for" cases where resolution of the question before the en banc panel would likely affect the ultimate outcome of the suit. *Sacramento Homeless Union v. City of Sacramento*, 115 F.4th 1149, 1155 (9th Cir. 2024) (R. Nelson, J., respecting denial of rehearing en banc). Any consideration of standing in this case would be academic—not just because *Younger* requires dismissal—but also because each of plaintiffs' federal claims is plainly meritless. "[A]ll circuit courts and the Supreme Court bar due process claims" by political subdivisions against their parent State. *San Juan Capistrano*, 937 F.3d at 1284 (R. Nelson, J., concurring). Plaintiffs' First Amendment claim fails for the reasons discussed above, *supra* pp. 6-7—and because the First Amendment applies to the States only by virtue of its incorporation through the Fourteenth Amendment. *See Bigelow v. Virginia*, 421 U.S. 809, 811 (1975).[9] And plaintiffs' final federal claim—that California violated the dormant Commerce Clause by "attempting to offer[]

---

[9] Because political subdivisions cannot bring Fourteenth Amendment claims against their parent State, *see, e.g.*, *Williams v. Mayor & City Council of Baltimore*, 289 U.S. 36, 40 (1933), they are necessarily barred from bringing First Amendment claims.

cheaper, more abundant housing than other states," 4-ER-663—makes no sense
whatsoever.  *See generally Nat'l Pork Producers Council v. Ross*, 598 U.S. 356,
390 (2023) ("Preventing state officials from enforcing a democratically adopted
state law in the name of the dormant Commerce Clause is a matter of 'extreme
delicacy,' something courts should do only 'where the infraction is clear.'").

## CONCLUSION

The petition for rehearing en banc should be denied.

Dated:  January 13, 2025                    Respectfully submitted,

*s/Samuel T. Harbourt*
_____

ROB BONTA
*Attorney General of California*
MICHAEL J. MONGAN
*Solicitor General*
HELEN H. HONG
*Principal Deputy Solicitor General*
DANIEL A. OLIVAS
*Senior Assistant Attorney General*
SAMUEL T. HARBOURT
*Deputy Solicitor General*
DAVID PAI
*Supervising Deputy Attorney General*
THOMAS P. KINZINGER
MATTHEW T. STRUHAR
*Deputy Attorneys General*
CARA M. NEWLON
*Associate Deputy Solicitor General*

CALIFORNIA DEPARTMENT OF JUSTICE
455 Golden Gate Avenue, Suite 11000
San Francisco, CA  94102-7004
(415) 510-3919
Samuel.Harbourt@doj.ca.gov
*Attorneys for Defendants and Appellees*

18

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

## Form 11. Certificate of Compliance for Petitions for Rehearing/Responses

*Instructions for this form:* *http://www.ca9.uscourts.gov/forms/form11instructions.pdf*

**9th Cir. Case Number(s)** 23-3694

I am the attorney or self-represented party.

I certify that pursuant to Circuit Rule 40-1, the attached petition for panel rehearing/petition for rehearing en banc/response to petition is *(select one)*:

[ **X** ] Prepared in a format, typeface, and type style that complies with Fed. R. App. P.

32(a)(4)-(6) and **contains the following number of words:** 3,873**.**

*(Petitions and responses must not exceed 4,200 words)*

**OR**

[  ] In compliance with Fed. R. App. P. 32(a)(4)-(6) and does not exceed 15 pages.


**Signature** *s/Samuel Harbourt*          **Date** Jan. 13, 2025
*(use "*s/[typed name]*" to sign electronically-filed documents)*

*Feedback or questions about this form? Email us at* *forms@ca9.uscourts.gov*

**Form 11**                                                                    *Rev. 12/01/24*